## Appeal of Annie H. Barry et al.

## Estate of Joseph Harrison, Jr., Deceased.

A testator gave an annuity of $10,000 for life and a power to dispose by will of one sixth of his residuary estate to each of his children. He also provided, in another item of the will, that if one son should leave no other issue or descendants than a son who was then living, his power of disposition by will should be limited to $50,000, and, in default of appointment, that that sum should be held in trust for the grandson, with the further provision that "if it shall happen that my said son shall leave other issue or descendants, living at his death, besides his said son, my grandson, then the foregoing provisions of my will are to apply to him as well as to my other children." The son left no other child than the grandson, who was a minor at the time of the testator's death, but was afterwards married and had children living at the time of the death of the testator's son. *Held*, that the words "issue or descendants" include the children of the testator's grandson, and that therefore the contingency named in the will never happened, and that the grandson was entitled to a share with the other children named in the will.

(Argued March 30, 1887. Decided April 11, 1887.)

January Term, 1887, No. 143, E. D., before MERCUR, Ch. J., TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from the decree of the Orphans' Court of Philadelphia County sustaining exceptions to the adjudication of a decedent's estate. Affirmed.

The facts appear by the following opinion of the court below, sustaining exceptions to the adjudication, the opinion being by ASHMAN, J.:

The construction which shall be put upon the words "issue or descendants" constitutes the single question in dispute. The testator gave an annuity of $10,000 for life, and a power to dispose by will of one sixth of his residuary estate to each of his children. He provided, however (by item 10), that if his son, William Henry Harrison, should leave no other issue or descendants than one son who was then living, his power of disposition by will should be limited to $50,000, and, in default of such appointment, that that sum should be held in trust for the grandson.

He then added: "If it shall happen that my said son shall leave other issue or descendants, living at his death, besides his said son, my grandson, William Henry Harrison, Jr., then the foregoing provisions of my will are to apply to him as well as to my other children."

William Henry Harrison left no other child than the son named in the will. The latter was a minor at the time of the testator's death, but has since married and has children living, who are the issue of his marriage.

The burden of the argument rests, of course, with those who maintain that the contingency contemplated by the testator has occurred. It was accordingly shown by the children of the testator that at the date of his will his son, William Henry, had but one child, William Henry, Jr., and that the latter, who was then thirteen years of age, had been sickly from infancy. These facts, it was argued, had led to the clause in question, as a necessary incident to the main purpose of the testator. That purpose was to continue the estate in his own family, and it was liable to defeat, if his son should die, leaving a single child, respecting whom the probabilities were that no issue would be born. Hence, when, after a liberal provision for the grandson, the testator directed that the share should go in the same way with the remaining shares, if his son should leave other issue or descendants living, besides the grandson, he meant by those words, other children of his said son, or their issue.

This construction, which diverts the word "issue" from its accepted meaning of heirs of the body, can stand only because the testator's intent shall be found to have so impressed the contrary intent upon it that the word will bear no other. The gift of $50,000 for the use of the grandson does not show such an intent. That gift was for the grandson's personal benefit, and the whole of it, if the trustee should see fit, was to be paid to him absolutely. It was predicated upon the thought that he would die childless. It provided for his death while a minor, and for his death at full age, intestate, and in both cases, without issue; but it made no provision whatever for his death leaving issue.

Very significantly, however, it was immediately followed by a clause which provided for two contingencies, neither of which seemed likely to happen, that the father should have another child, or that the son should marry. This clause (by its direction that if the father should leave other issue or descendants

than the grandson, the latter should stand upon the same footing with the children) filled up the gap which had been purposely left in the preceding clause, and included his children, if he should have any, among his father's descendants.

The legatees who contend that the testator here meant the descendants of another child or children only, are forced to concede, what seems fatal to their theory, that if another child had been born to William Henry, the father, the present grandson, would have been equally entitled with that child to share in the estate, and would have received, if the child had happened to die without issue, after its father, a portion valued at $600,000.

An intent to exclude the issue of the grandson cannot well be extracted from these gifts, and it is not apparent elsewhere in the will. But without that intent, there is no reason for regarding "issue or descendants" as words of purchase. The opposite constructions conform to three recognized principles for interpreting wills: that that reading is to be favored which does not disinherit the heirs, which adheres most closely to the statute of distribution, and which gives to words of art their technical meaning. To these a fourth may be added,—that effect shall be given, if possible, to every word in a will. The testator seems to have imagined that the word "issue" might be mistakenly read "children;" and he therefore followed it in the disjunctive with "descendants."

If the rule which was quoted and approved in Hancock's Appeal, 112 Pa. 541, 3 Cent. Rep. 527, 5 Atl. 56, that "the question in expounding a will is not what the testator meant, but what is the meaning of his words," is to govern in this case, there can be no doubt of the result.

A decree was entered in accordance with this opinion.

The assignments of error specified the action of the court: (1) In deciding that William Henry Harrison, Jr., is entitled to the one sixth of the income of the estate in the hands of the trustees after deducting the annuity to the widow of the testator; and (2) in not awarding $50,000 to the trustees in trust for William H. Harrison, Jr., and his family and issue, as directed by the tenth clause of the will, and in not distributing the residue of the income among the five surviving children of the testator.

*John G. Johnson* and *Richard C. McMurtrie,* for appellant.—

A fantastic limitation is a good reason for not reading a word in a sense that it can certainly bear. Male descendant will not be held to include a son of a daughter when the effect must be to pass over the mother in favor of her son. 3 Myl. & C. 621, per Lord ELDON.

The absurdity of the construction put upon this will by the court below is exposed by this test: If my son shall have but the one son now living, he is to take nothing; should he have others he may give this son the whole; if he does not, that son shall share with the others.

JAMES, L. J., says, in Ralph v. Carrick, L. R. 11 Ch. Div. 883: " 'Issue' is an ambiguous word. In the ordinary parlance of laymen it means children and only children. When you talk of what issue a man has, or what issue there has been of a marriage, you mean children, not grandchildren or great grandchildren. But in the language of lawyers, and only in that language, it means descendants."

As the late Henry Wharton well put it: If you state this to any layman he is startled; but if you ask him, Do you mean if your son dies and leaves children they are to get nothing,—he always says: Certainly not. You must choose between one class and all classes of descendants,—there can be no intermediate position.

And that it is used in the sense of children here is quite certain; and unless the testator meant to use two words having the same meaning with the alternative copulative "or," he must have used them in different meanings. To construe issue as including all possible issue will make him say: Unless any child leaves lineal posterity of any degree of remoteness or any descendants. Now, that is to impute bad English when it need not be imputed. If, however, you read the words correctly, as you are bound to do, you have—unless my son dies without children or descendants. Issue certainly here means what it naturally does —children, because another word is used which renders it unnecessary to give it the legal and non-natural sense.

The only point worthy of discussion is, therefore, whether there is not enough to warrant the inference that the word "descendants" when thus used in connection with issue, meaning children, does not warrant the exclusion of the grandchildren of the son, where the son, the only living issue, was excluded from being counted as issue.

In addition to what has been said, we call attention to the fact that if these grandchildren are reckoned as descendants, in order to exclude the operation of the tenth clause, the singular effect is produced that where children are provided for under the term "family" and issue of the father, the existence of one of them at the death of his grandfather destroys the provision for all the children, and gives nothing expressly or by implication to the one whose existence destroys the provision for the class.

By the preceding clause all the posterity of W. H. Harrison had been provided for as they would have taken had W. H. Harrison been the owner of the share and died intestate. Can it be doubted that, as the intention was by the tenth clause to substitute for that a limitation of the share, the words "issue and descendants" must be read as meaning such issue or descendants as would take under the preceding clause? If so, the decree was wrong. It is true that would not have covered the remote contingency of W. H. Harrison, Jr., dying, leaving issue, while his father was living, except we insert "their" as suggested.

But this is in accordance with the universal mode of expression. Who ever saw a limitation to persons or classes followed by a limitation on default, which did not mean at least to say in default of the persons or classes appointed to take? Then, on the death of W. H. Harrison there was but one child, and that child is excluded; and in place of giving him his father's share, $50,000 is given to him and his family.

*J. B. Townsend, Samuel Dickson,* and *G. Heide Norris,* for appellee.—In endeavoring to reach the construction to be placed upon the word "issue," of which the books are full, one fundamental division into two classes must be made. First, where the word "issue" is applied to a derivative estate coming through an ancestor who took a precedent estate (most of the authorities involve questions concerning this first class). Second, where the term "issue" is used to define lineals without reference to any estate coming to them through their ancestor or under the will in question. The word "issue," as used in the present will, is to be ranked in the second class because, when the testator is using the term, he is not giving or limiting to such issue any interest or estate in the property, but is simply naming them as a class whose existence or nonexistence is to affect the estate or interest which his grandson, the appellee, is to take. In other

words, if no such parties as the testator intended by the terms "issue" were living at the death of the latter, then the preceding provisions of the will, so far as the share of his son, William Henry Harrison, were to be modified and changed; but if there had come into being and did exist such issue at the time designated, then the preceding provisions of his will were to stand in respect to all his children without exception. Nothing is in terms given by the tenth item to these "issue or descendants;" and the simple question is, Did they exist at the time required? If they did, the appellee succeeds to his father's share. If they did not come into existence at the time designated, the appellee's interest is reduced to the $50,000 legacy.

The word "issue" has always been held to designate a class, and is to be read in its natural sense as applying to all lineal descendants of different generations in existence at the time designated by the testator. Haydon v. Wilshere, 3 T. R. 372; Hockley v. Mawbey, 1 Ves. Jr. 150; Freeman v. Parsley, 3 Ves. Jr. 421; Leigh v. Norbury, 13 Ves. Jr. 340; Wythe v. Thurlston, 2 Ambl. 554; Davenport v. Hanbury, 3 Ves. Jr. 257; Hawkins, Wills, 187, 188; Cook v. Cook, 2 Vern. 545; Bradshaw v. Melling, 19 Beav. 417; Miller's Appeal, 52 Pa. 113; Pennock's Estate, 33 Phila. Leg. Int. 290; Coyle's Appeal, 83 Pa. 242; Bouvier Law Dict. title, *Descendants;* Butler v. Stratton, 3 Bro. Ch. 367; Ralph v. Carrick, L. R. 11 Ch. Div. 873; Wistar v. Scott, 105 Pa. 200, 51 Am. Rep. 197; Wistar v. Gillilan, 1 Sad. Rep. 435.

In the course of the argument of Templeman v. Warrington, 13 Sim. 269, Sir RICHARD BETHELL, afterward Lord WESTBURY, said: "Now, it is a well-established rule of this court not to give to a devesting clause a more extensive meaning than it strictly bears, but, where it is to take effect on the happening of a particular contingency, to confine its operation to the happening of that contingency." See also Maddison v. Chapman, 4 Kay & J. 709, for a striking illustration of this rule.

It is submitted that the word "issue" can never be made to mean child, except by the addition of words of limitation or modification, or where, as in Sibley v. Perry, 7 Ves. Jr. 522, the use of the word "parent" naturally suggests its correlative, "child."

The word "descendants" has been invariably held to include all lineals, without regard to the generations in which they shall

be born, and cannot be restricted to children.    2 Redf. Wills, 73; Theobald, Wills, 262; 1 Roper, Legacies, 135; 2 Jarman, Wills, 32; 2 Wms. Exrs. 811; Butler v. Stratton, 3 Bro. Ch. 367; Ralph v. Carrick, L. R. 11 Ch. Div. 873.

If the testator was under the strong belief that his son William Henry's line was to terminate with the appellee, and that the latter would have no issue to survive the father, and he wished to limit the appellee from being the heir to carry over to his mother the whole of the share of her husband, there is nothing unreasonable in his adopting the language he did.    But he has most unmistakably declared his intention to make his grandson a new *propositus* or beneficiary in his father's stead, if he shall appear at his father's death to be the founder of a family which shall continue that line beyond himself.

No traveling outside of the words used is to be indulged in when the testator has made use of words that are susceptible of exposition of what he has written.    Abbott v. Middleton, 7 H. L. Cas. 68; Wentz's Appeal, 106 Pa. 301; Hancock's Appeal, 112 Pa. 532, 3 Cent. Rep. 527, 5 Atl. 56.

In all wills of doubtful construction that interpretation shall be adopted which is nearest to the distribution directed by our intestate laws.    Smith's Appeal, 23 Pa. 9; Manderson v. Lukens, 23 Pa. 31, 62 Am. Dec. 312; Rewalt v. Ulrich, 23 Pa. 388; Letchworth's Appeal, 30 Pa. 175; Womrath v. McCormick, 51 Pa. 504; Minter's Appeal, 40 Pa. 111.

The reason always given for substituting one word for another, as "or" for "and" where the devise is to A in fee simple, with a limitation over in the event of A dying under twenty-one, or without issue, is that "it never could have been the testator's intention in giving an estate to a person and his heirs, to give it away from that person's issue, if he should happen to die under twenty-one leaving no issue."    Grey v. Pearson, 6 H. L. Cas. 61–80.

Or, as Chief Justice TILGHMAN expressed it: "That he should give him [his son] a fee simple and then deprive his children of it, because he happens to die before twenty-one, is altogether unnatural and improbable."    Hauer v. Sheetz, 2 Binn. 545.

If grandchildren, born in the lifetime of their grandfather, are left without provision if their father should die in the lifetime of his father, this case comes directly within the authority

of this line of decisions, which, starting 200 years ago, are now recognized as constituting a settled rule of property.

Where, however, the effect is to disinherit the heir, a directly contrary rule is adopted, and without referring to the mere general declarations of the rule as found in innumerable cases collected and digested in appellant's argument in Hancock's Appeal, 112 Pa. 532, 3 Cent. Rep. 527, 5 Atl. 56, reference may in particular be made to the cases of Bender v. Dietrick, 7 Watts & S. 284; and Rupp v. Eberly, 79 Pa. 141, for illustrations of the enforcement of the rule.

PER CURIAM:

In passing on the correctness of this decree the tenth item in the will should not be considered alone. Under the preceding items the conclusion reached by the learned court would be clearly right. The effect of those items was to be changed on the happening of the contingency named in the tenth. Inasmuch, however, as that contingency did not happen, the estate previously given remained unchanged, and the decree is correct.

Decree affirmed and appeal dismissed, at the costs of the appellants.